IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **RUFINO VILLA MUNOZ,** | § | |
| **Movant,** | § | |
| | § | |
| **v.** | § | **No. MO: 13-CV-00124-RAJ-DC** |
| | § | **No. MO: 12-CR-00072-RAJ-DC** |
| **UNITED STATES OF AMERICA,** | § | |
| **Respondent.** | § | |

**REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE**

BEFORE THE COURT in this federal habeas corpus proceeding is Movant Rufino Villa Munoz's ("Movant") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody ("Motion to Vacate") (Doc. 60), Movant's Memorandum in Support of Motion (Doc. 61), the Government's Response to Movant's Section 2255 Motion to Vacate (Doc. 68), and Movant's Reply to the Government's Response (Doc. 69).  After reviewing the parties' submissions, the record of the proceedings before the U.S. District Court in the underlying criminal case, and the applicable case law, the U.S. Magistrate Judge **RECOMMENDS**, for the reasons set forth below, that Movant's Section 2255 Motion to Vacate, Set Aside or Correct Sentence be **DENIED** and that this Section 2255 proceeding be **DISMISSED**.  (Doc. 60).

I.      BACKGROUND FACTS AND PROCEDURAL HISTORY

On February 22, 2012, a federal Grand Jury sitting in the Midland/Odessa Division of the Western District of Texas returned a one-count Indictment charging Movant with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1).  (Doc. 12 at 1).  On April 23, 2012, Movant entered a guilty plea to Count One of the Indictment before the undersigned Magistrate Judge.  (Doc. 25).  As part of the oral factual basis supporting his plea, Movant admitted that he fired a shotgun twice while riding in a car in pursuit of another vehicle containing his brother and his brother's wife.  (Doc. 54 at 33-34).  On July 19, 2012, the District

Judge sentenced Movant to one hundred eight (108) months imprisonment in the United States Bureau of Prisons, to be followed by three (3) years supervised release.  (Doc. 36).  The District Court found that Movant's use of the firearm occurred in connection with the commission of attempted first degree murder.  (Doc. 49 at 13, 22).  The District Court, therefore, applied a cross-reference to the guideline for attempted first degree murder under United States Sentencing Guidelines § 2A2.1(a)(1) and calculated a base offense level of 33.  (*Id*. at 22).  On July 20, 2012, the Court entered its Judgment and Commitment.  (Doc. 38).

Over the course of the Government's prosecution of Movant, he was represented by attorney Wayne N. Frost (appointed), whose representation began February 8, 2012.  (Doc. 3).  Attorney Frost is the subject of Movant's claims of ineffective assistance of trial counsel.  (Doc. 60 at 5-6).  On behalf of Movant, Mr. Frost filed a Notice of Appeal on July 31, 2012.  (Doc. 42).  On August 8, 2012, Movant filed a Motion to Withdraw and to Appoint New Counsel and Mr. Frost's representation was terminated.  (Doc. 43).  The Court appointed attorney David K. Sergi as Movant's counsel for appellate purposes.  (Doc. 50).  Attorney Sergi is the subject of Movant's claims of ineffective assistance of appellate counsel.  On June 14, 2013, the United States Court of Appeals for the Fifth Circuit affirmed the judgment of the District Court.  (Doc. 58 at 3).  Movant did not pursue a petition for a writ of certiorari in the United States Supreme Court.

Movant, a federal prisoner, timely filed this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 on December 16, 2013.  (Doc. 60).  On the same day, Movant filed a Memorandum in Support of his Motion to Vacate.  (Doc. 61).  On July 23, 2014, the Government filed its Response in Opposition to the Motion to Vacate.  (Doc. 68).  On August 11, 2014, Movant filed his Reply to the Government's Response.  (Doc. 69).  This matter is before the Magistrate Judge for the Midland/Odessa Division of the Western District of Texas by Order of Referral from the District Judge for a Report and Recommendation including proposed Findings of Fact and

2

Recommendations for Disposition pursuant to 28 U.S.C. § 636 and Appendix C of the Local Rules for the Assignment of Duties of the United States Magistrates.  (Doc. 70).

## II.    MOTION TO VACATE

First, Movant alleges an ineffective assistance of trial counsel claim in the plea context. Movant seeks to vacate his sentence and argues in his Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 that "upon the advice of his Counsel, Wayne Frost, [Movant] entered a plea of guilty to the offense of 'felon-in-possession-of-a-firearm' in violation of Title 18 U.S.C. § 922(g)(1), at no time, prior to, during, or after [Movant] entered his guilty plea, was he aware that he could or would be punished for 'attempted murder.'"  (Doc. 61 at 6).  Contrary to the allegations raised in the Motion to Vacate, Movant was never charged, convicted or sentenced for the crime of attempted murder by the District Court.

Further, Movant contends that "Mr. Frost, never once advised [Movant] that his offense conduct may subject him to punishment for 'attempted first degree murder.'"  (*Id.*).  Again, Movant was not indicted or punished for the crime of attempted first degree murder by the District Court. Movant claims that had counsel told him "his offense conduct may subject him to punishment for 'attempted first degree murder,'" then he would not have entered a guilty plea.  (*Id.*).  Movant goes on to state that he "stead fastly [sic] denied that he 'attempted to commit first degree murder' and that his weapon possession was in no sense for violence or other conduct."  (*Id.*).

Next, Movant alleges an ineffective assistance of counsel claim relating to the sentencing hearing in the underlying criminal case.  Movant asserts that his trial counsel was ineffective during the sentencing hearing when he "voiced objections to the application of the underlying offense of attempted murder, however, the objection was not proper and not supported by law or the facts."  (*Id.* at 4).  Specifically, Movant contends that Mr. Frost should have raised a constitutional objection to Movant "being punished for an offense he did not plead guilty to."  (*Id.*).  Movant maintains that his

trial counsel was ineffective at sentencing because Mr. Frost failed to prevent the murder cross-reference from being applied:

> [Movant] entered a guilty plea to the criminal conduct which he believed to be guilty of on April 23, 2012, i.e. "prohibited person in possession of a firearm" in violation of 18 U.S.C. § 922(g)(1).  At no point during, prior to or subsequent to entering his guilty plea, did [Movant] admit to "at[t]empting to murder" anyone and to use the Guidelines under § 2A2.1(a)(1), in calculating [Movant's] punishment is in stark contrast to [Movant's] Fifth and Sixth Amendment rights as set forth in the United States Constitution, and as set out ahead.

(*Id*. at 5).   Movant argues that "the failure of [Movant's] lawyer in not voicing objections to the Court's use of the cross-reference to the Sentencing Guidelines for first degree murder under U.S.S.G. § 2A2.1(a)(1)," constituted ineffective assistance of counsel and violated Movant's "Due Process Clause right under the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the proscribed range of punishment for a crime must be charged in an indictment, submitted to a jury, and admitted by a guilty pleading defendant."  (*Id*. at 8).   Movant contends that his trial counsel "did not advise him that his range of punishment would be calculated while using the cross-reference to the United States Sentencing Guidelines ("USSG") and would necessarily require his felon-in-possession offense to be calculated under the 'first degree murder' provisions of the USSG."  (*Id*.).

Finally, Movant contends that his appellate counsel was ineffective for failing to "adequately raise meritorious issues in [Movant's] direct appeal to the United States Court of Appeals for the Fifth Circuit."  (*Id*. at 15-16).  On appeal, attorney Sergi argued on behalf of Movant that "his actions did not amount to attempted first degree murder because he fired at his brother's vehicle in a sudden rage following heated exchanges with his brother."  *United States v. Munoz*, 523 F. App'x 278, (5th Cir. 2013) (per curiam) (not selected for publication).  The Fifth Circuit affirmed the District Court's finding that Movant used the firearm in connection with the commission of attempted first degree murder.  *Id*.  Movant argues that Mr. Sergi's argument was frivolous and "certainly falls outside the

wide range of professional assistance required of a lawyer providing appellate representation from a criminal conviction."  (Doc. 61 at 16).  For the reasons set forth below, the Magistrate Judge recommends that Movant's Section 2255 Motion to Vacate be denied.

### III.    GOVERNMENT'S RESPONSE

In response to Movant's Section 2255 Motion to Vacate, the Government provides a thorough description of the underlying offense:

On January 29, 2012, [Movant] and some of his family members were at a nightclub in Midland, Texas.  An altercation occurred among the family members, including [Movant], that resulted in [Movant's] brother, Edward Munoz, leaving the bar and getting into his vehicle.  [Movant] and another individual got in another vehicle and pursued Edward at a high rate of speed.  [Movant] was in the passenger seat of the pursuing vehicle and at least twice fired a 12-gauge shotgun out of the vehicle at the fleeing suburban that Edward was driving.  After law enforcement located [Movant's] vehicle, a felony stop was conducted, and inside the vehicle were two firearms: a .22 caliber Marlin rifle and a 12-gauge shotgun.  The foregoing largely tracks the oral factual basis with which [Movant] agreed on the record and to which he made not alteration or objection at the time of the plea.

The PSR recounts in greater detail what occurred on January 29, 2012, and provides the contours to the factual basis.  The Court relied upon these additional facts in finding that [Movant] committed the offense of attempted murder.  Specifically, [Movant], having just been released from federal prison on January 6, 2012 (PSR ¶ 12), called his brother Edward and invited him to join [Movant] and other family members at a bar in Midland, (PSR ¶ 6).  Edward and his eight-months-pregnant wife arrived at the bar and observed the sister of both Edward and [Movant].  [Movant] instructed Edward to say hello to the sister, with whom Edward was somewhat estranged.  When Edward refused [Movant's] commands, [Movant] and Edward began arguing, which led to fisticuffs.  After the scuffle, Edward and his pregnant wife left the building and got in their vehicle.  As they were trying to get in their vehicle and leave, [Movant] and other family members began throwing handfuls of rocks from the parking lot at Edward, his wife, and the vehicle.  (PSR ¶ 6, 9.)  Indeed, at least one rock struck Edward's wife in the head as they were entering the vehicle.  Angered, Edward put the vehicle in reverse and struck [Movant] with the side mirror of the vehicle, and then immediately departed the parking lot and drove away.  (PSR ¶ 6).

While en route to the hospital to get treatment for Edward's hand that appeared to need stiches as a consequence of the fight with [Movant], Edward and his wife were stopped at an intersection when they observed [Movant] and another individual in a vehicle approach and begin shooting at them.  (PSR ¶ 7, 9.)  Edward accelerated in an attempt to out-run them.  Edward's pregnant wife dropped to the floorboard and called 9-1-1.  The 911 operator instructed them to drive to the Midland Police Department, which they did.  (PSR ¶ 4.)  As a matter of fact, on the 911 recording, Edward and his wife can be heard in a state of fear, and a revving

5

engine can also be heard.  (PSR ¶ 9.)  Edward's wife recalled hearing approximately 20 shots being fired.  (PSR ¶ 7.)

Once Edward and his wife made it to the police station, [Movant] and the other individual dropped the pursuit and casually drove past, but were soon thereafter stopped by a patrol unit that had heard the incident reported.  (PSR ¶ 4.)  In addition to the firearms located in the vehicle, law enforcement also located two spent shotgun shells in the floorboard of the passenger side of the vehicle where [Movant] was sitting.  (PSR ¶ 5.)

As part of the factual basis for his plea, [Movant] admitted that he fired a shotgun twice while riding in a car in pursuit of another vehicle containing his brother and his brother's wife.

(Doc. 68 1-3).  Based on these facts, the Government argues that Movant's Section 2255 Motion to Vacate does not warrant relief.  (*Id*. at 4).  The Government contends that Movant "simply continues to argue that the murder cross-reference does not apply, even though this Court at sentencing rejected that argument, and the Fifth Circuit on appeal affirmed this Court's conclusion in that regard."  (*Id*. at 5).  Because Movant's "conclusory statements about how his two attorneys could have made better arguments are unavailing," the Government urges the Court to dismiss this Section 2255 proceeding.

## IV.    STANDARD OF REVIEW

A prisoner serving a sentence imposed by a federal court claiming "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States," may move the court which imposed the sentence to vacate, set aside or correct the sentence. 28 U.S.C. § 2255(a).  If the court concludes that the prisoner's motion is meritorious, it must "vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).  There are four grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; and (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; *Hill v. United States*, 368 U.S. 424, 426−27 (1962).

6

Following a conviction and exhaustion of the right to direct appeal, a criminal defendant is presumed to stand fairly and finally convicted. *United States v. Shaid*, 937 F.2d 228, 231–32 (5th Cir. 1991) (en banc), *cert. denied*, 502 U.S. 1076 (1992). Thus, relief under Section 2255 "is reserved for transgression of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam)). A motion under Section 2255 "may not do service for an appeal," and the movant "must clear a significantly higher hurdle than would exist on direct appeal" in order to obtain relief. *United States v. Frady*, 456 U.S. 152, 165 (1982).

## V.   EVIDENTIARY HEARING

Title 28, United States Code, Section 2255, controls whether an evidentiary hearing is required in this case. That statute provides that a district court may deny a Section 2255 motion without conducting any type of evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b); *United States v. Pena-Garavito*, 539 F. App'x 506, 506 (5th Cir. 2013) (not selected for publication); *United States v. Rivas-Lopez*, 678 F.3d 353, 358 n. 35 (5th Cir. 2012) (citing *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (per curiam)). There is no requirement in the language of 28 U.S.C. § 2255 that the district court conduct a live hearing with the prisoner present when an evidentiary hearing is required to rule on a motion to vacate. *See Sanders v. United States*, 373 U.S. 1, 20–21 (1963). "A court may entertain and determine such motion without requiring the production of the prisoner at the hearing." 28 U.S.C. § 2255(c).

However, in Section 2255 cases where resolution of factual issues is required, the "contested fact issues ordinarily may not be decided on affidavits alone, unless the affidavits are supported by other evidence in the record." *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981) (citing

*Owens v. United States*, 551 F.2d 1053, 1054 (5th Cir. 1977)).  Thus, in cases in which factual issues are contested that cannot be resolved by affidavits, the movant must be present at the evidentiary hearing to resolve the contested factual issues.  *See Hughes*, 635 F.2d at 451; *see also, United States v. Arguellas*, 78 F. App'x 984, 986–87 (5th Cir. 2003) (no selected for publication).

Importantly, prisoners who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court.  *See Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).  A movant bringing a claim under Section 2255 that conflicts with his sworn testimony must provide "specific factual allegations" regarding the alleged violation of his constitutional rights, and these allegations must be corroborated before a hearing will be required.  *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998).  When the movant's "showing is inconsistent with the bulk of [his] conduct or otherwise fails to meet [his] burden of proof in light of other evidence in the record," the Court may dispense with his allegations without an evidentiary hearing.  *Id*.

An evidentiary hearing is not necessary in this case since Movant has presented claims that are contrary to law or plainly refuted by the record.  *United States v. Demik*, 489 F.3d 644, 646–47 (5th Cir. 2007) (conclusory allegations of ineffective assistance insufficient to warrant an evidentiary hearing), *cert. denied*, 552 U.S. 982 (2007); *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (conclusions devoid of specific factual support do not require an evidentiary hearing), *cert. denied*, 548 U.S. 908 (2006).  In opposition to Movant's Section 2255 Motion to Vacate, the Government relies on a transcript from the plea hearing held on April 23, 2012, before the undersigned Magistrate Judge.  (Doc. 54).  Movant's solemn declarations made during this plea hearing in the underlying criminal case contradict his allegations of ineffective assistance of trial counsel in the plea context.  (*Id*.).

"Ordinarily a defendant will not be heard to refute his testimony given under oath when pleading guilty." *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985) (quoting *United States v. Sanderson*, 595 F.2d 1021, 1021 (5th Cir. 1979) (per curiam)). Such refutations may only be heard on collateral review when the movant "offers specific factual allegations supported by the affidavit of a reliable third person. . . ." *Id*. In other words, when a Section 2255 movant makes allegations that conflict with his sworn testimony at the plea hearing, he must produce "independent indicia of the likely merit of [his] allegations, typically in the form of one or more affidavits from reliable third parties. . . ." *Cervantes*, 132 F.3d at 1110 (citing *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989)).

In the present case, Movant provides no affidavit from any reliable third person to contradict his sworn statements at the plea hearing. To the extent that Movant's allegations in his Section 2255 Motion to Vacate are inconsistent with his solemn declarations made during the plea hearing, he has failed to provide independent support to corroborate these claims and he is not entitled to an evidentiary hearing. Because Movant has not overcome the presumption of verity accorded his in-court declarations, the record is adequate to fully and fairly address his claims. Based on the sworn statements Movant gave during the plea hearing and the sentencing hearing, the record conclusively shows that Movant is entitled to no relief. Accordingly, this case may be decided without an evidentiary hearing.

## VI.   CREDIBILITY FINDING

It is the responsibility of the trial court to weigh the conflicting testimony and resolve any conflicts in the testimony and evidence. *Hall v. United States*, 489 F.2d 427, 428 (5th Cir. 1974). After reviewing the transcripts from the plea hearing and the sentencing hearing, the Magistrate Judge finds that Movant's ineffective assistance of trial counsel claims are not credible. First, Movant's memory and bald assertions are neither reliable nor trustworthy.

9

Second, Movant has falsely asserted that he is "being punished for an offense he did not plead guilty to." (Doc. 61 at 4). In fact, Movant did plead guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) on April 23, 2012, before the undersigned Magistrate Judge. (Doc. 54). This is the exact offense that resulted in Movant's imprisonment. The District Judge sentenced Movant on July 19, 2012, to a term of 108 months imprisonment for the offense of being a felon in possession of a firearm. (Doc. 49). Accordingly, Movant's argument that the District Judge punished him for a crime he did not commit is baseless.

Third, Movant's assertion that "[a]t no time during the ensuing chase of Edward's vehicle did [Movant] intend to kill his brother or his sister-in-law" is simply not believable in light of the facts of the underlying criminal case. (Doc. 61 at 3). Movant alleges that "his weapon possession was in no sense for violence or other conduct." (*Id*. at 6). Again, Movant claims that "[a]t no point did [Movant] have 'intent' to cause or attempt murder." (*Id*. at 7). However, Movant admitted the following facts were true at the plea hearing:

> Two family members left the bar driving in a Suburban, and [Movant] and another individual pursued the Suburban in a Camaro at a high rate of speed. And, during that pursuit, [Movant] was in the front passenger seat of the Camaro, and twice fired a 12 gauge shotgun out of the passenger window.

(Doc. 54 at 34). At the sentencing hearing, Movant confirmed that "[i]t was two times that we shot" at his brother's vehicle. (Doc. 49 at 30). Since the police department found shotgun pellets in the side of the vehicle, the District Court concluded that Movant pulled out a shotgun and shot multiple times with deliberate intent to harm someone in the vehicle. (*Id*. at 20). On appeal, the Fifth Circuit found that "[Movant] got in a car and willfully sought out his brother and his brother's wife before firing on them." *Munoz*, 523 F. App'x at 278. Accordingly, Movant's allegations that he never used the shotgun "for violence" or "to kill his brother or his sister-in-law" have no factual support.

Fourth, Movant stated under oath at the plea hearing that he did not want a new lawyer. (Doc. 54 at 3). Then, Movant testified that he wanted to plead guilty. (*Id*. at 8). He further explained that he did not want a trial. (*Id*. at 11). Next, the following exchange occurred:

> THE COURT: Mr. Munoz, are you satisfied with Mr. Frost's representation of you in this legal matter?
> DEFENDANT MUNOZ: Yes, your Honor.
> THE COURT: Do you have any complaints you want to -- you know, that -- at all about Mr. Frost?
> DEFENDANT MUNOZ: No, sir.

(*Id*. at 16). Because Movant expressed his satisfaction with Mr. Frost's advice and performance at the plea hearing, Movant's claims of ineffective assistance of trial counsel are conclusory and completely unsupported by the record. The inconsistencies between Movant's allegations of ineffective assistance and his assertions in open court during the plea hearing in the underlying criminal case, call into question Movant's truthfulness generally and specifically with respect to his assertion that his counsel's representation fell below the wide range of professional competence demanded by the Sixth Amendment. Based on the foregoing, the undersigned believes that Movant is entitled to no relief.

## VII. DISCUSSION

Movant raises the following claims in his Section 2255 Motion to Vacate: (1) "Ineffective Assistance of Counsel (Plea)"; (2) "Ineffective Assistance of Counsel (Sentencing)"; and (3) "Ineffective Assistance of Counsel (Appellate)." (Doc. 60). Movant baldly asserts that "counsel's performance is deficient for his failure to advise [Movant] that his guilty plea to the offense charged in the indictment, 'felon-in-possession-of-a-firearm' would be subject to the 'attempted mu[r]der' cross-reference under U.S.S.G. § 2A2.1(a)(1). . . ." (Doc. 61 at 9). In addition, Movant alleges that his trial counsel performed deficiently by failing to fully object to the application of the attempted murder cross-reference at sentencing. (*Id*. at 4). Finally, Movant claims that his appellate counsel provided ineffective assistance by failing to make a meritorious argument on direct

11

appeal concerning the District Court's application of the attempted murder cross-reference.  (*Id.* at 15).  Accordingly, all of Movant's claims relate to the District Court's finding that he possessed a firearm in connection with the commission of the underlying offense of attempted murder pursuant to U.S.S.G § 2A2.1(a)(1).  (Doc. 60).  Examination of the record and the applicable law shows that Movant's claims of ineffectiveness are without merit and should be denied.

### A.    Legal Standard for Ineffective Assistance of Counsel Claims

Claims based on ineffective assistance of counsel may be raised for the first time in a collateral proceeding, whether or not the issue could have been raised on direct appeal.  *Massaro v. United States*, 538 U.S. 500, 509 (2003).  The Sixth Amendment guarantees defendants the "right to effective assistance of counsel at every critical stage of the proceedings against them."  *United States v. Fields*, 565 F.3d 290, 293−94 (5th Cir. 2009) (quoting *Burdine v. Johnson*, 262 F.3d 336, 344 (5th Cir. 2001)).  In order to prevail on an ineffective assistance of counsel claim, Movant must show: (1) that counsel's performance was deficient; and (2) that counsel's deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687–91 (1984).

The burden of proof is on the Movant who is alleging ineffective assistance of counsel. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999) (citing *Clark v. Collins*, 19 F.3d 959, 964 (5th Cir. 1994)).  If Movant fails to prove one of the elements, it is unnecessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *see also Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

To prove deficient performance, Movant must show that his attorney's conduct fell below an objective standard of reasonableness.  *United States v. Juarez*, 672 F.3d 381, 385 (5th Cir. 2012) (citing *Strickland*, 466 U.S. at 688).  The Court applies a strong presumption that counsel's

professional conduct was objectively reasonable or might be viewed as appropriate trial strategy. *Strickland*, 466 U.S. at 689; *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999).   Deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."   *Fields*, 565 F.3d at 294 (quoting *Strickland*, 466 U.S. at 687).   In determining the merits of an alleged Sixth Amendment violation, a court "must be highly deferential" to counsel's conduct.   *Strickland*, 466 U.S. at 687. Bald conclusory statements by a defendant are not enough to sustain a claim of ineffective assistance of counsel.   *Sayre v. Anderson*, 238 F.3d 631, 635–36 (5th Cir. 2001).   The allegations of ineffective assistance of counsel must be supported by the record.   *United States v. Johnson*, 679 F.2d 54, 58–59 (5th Cir. 1982).

To demonstrate prejudice, Movant must show that the result of the proceedings would have been different but for counsel's unprofessional errors or that counsel's performance rendered the proceedings unreliable or fundamentally unfair.   *Lockhart v. Fretwell*, 506 U.S. 364, 369–72 (1993); *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009).   The defendant must "affirmatively prove prejudice."   *Strickland*, 466 U.S. at 693.   This requires a showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   *Id.* at 687. Prejudice generally exists only if the defendant demonstrates that he would have received less jail time.   *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

**B.     Movant's Ineffective Assistance of Counsel Claims in the Plea Context**

In his first ground, Movant contends that he received ineffective assistance of counsel because his attorney failed to advise him that by pleading "guilty to the offense of 'felon-in-possession-of-a-firearm' in violation of Title 18 U.S.C. § 922(g)(1) . . . he could or would be punished for 'attempted murder.'"   (Doc. 61 at 6).   Notably, Movant was never punished by the District Court for the criminal offense of attempted murder.   Rather, Movant was charged with and

13

sentenced for the crime to which he pleaded guilty, being a convicted felon in possession of a firearm, and the District Court increased the base offense level after finding that Movant possessed a firearm in connection with the commission of the underlying offense of attempted murder.  Because this finding was only relevant to the calculation of Movant's base offense level and did not constitute an independent conviction for a separate offense, Mr. Frost had no reason to advise Movant that he would be "punished for 'attempted murder,'" as alleged by Movant.   Accordingly, Movant's ineffective assistance claim is fatally flawed and should be denied.

### 1.        Movant Cannot Establish Deficient Performance

Movant argues that "but for [his] counsel's deficient performance by failing to adequately advise [him] that his range of punishment would be fixed under the 'cross-reference' to the United States Sentencing Guidelines while using the 'attempted first degree murder' provision," he would not have pleaded guilty.  (Doc. 61 at 10).  However, Movant's claim that Mr. Frost failed to explain the application of the Sentencing Guidelines, including the cross-reference for attempted first degree murder under Section 2A2.1(a)(1), is unavailing.

Providing counsel to assist a defendant in deciding whether to plead guilty is "[o]ne of the most precious applications of the Sixth Amendment . . . ."  *Grammas*, 376 F.3d at 436 (quoting *Reed v. United States*, 354 F.2d 227, 229 (5th Cir. 1965)).  When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice.  *Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995).  *Hill* established that claims of ineffective assistance of counsel in the plea context are governed by the two-part test set forth in *Strickland*, and thus, are established in the same manner as any other ineffective assistance of counsel claim.  *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).  Movant must show "that [defense] counsel's representation fell below an objective standard of reasonableness."  *Id.* (quoting *Strickland*, 466 U.S. at 687–88).  Moreover, "[i]n the context of

pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S.Ct. at 1384.

In this case, Movant's claim that "at no time prior to, during, or after pleading guilty to being a felon in possession of a firearm, did his lawyer advise him that he would be subject to a range of punishment for a crime that he was not charged with, did not plead guilty for, nor convicted of, i.e. attempted murder," is wholly conclusory.  (Doc. 69 at 5).  Again, Movant was **never** subjected to punishment for the crime of attempted murder by the District Court.  Rather, the District Judge sentenced Movant for the charged offense of being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Therefore, Movant's claim that his trial counsel was ineffective for failing to explain to him that he would be punished "for a crime that he was not charged with, did not plead guilty for, nor convicted of, i.e. attempted murder," has no merit.

The transcript from the plea hearing in the underlying criminal case makes clear that Movant understood the following:  how the Sentencing Guidelines would be applied to his case; the repercussions of pleading guilty to the Indictment; how his sentence would be calculated; and how the application of relevant conduct would affect his case.  (Doc. 54).  At the plea hearing, Mr. Frost asserted that Movant was competent to enter a guilty plea and that they had previously discussed "his eventual sentence," which Movant did not deny.  (*Id*. at 9).  Then, the following exchange took place between Mr. Frost, Movant and the Court:

> THE COURT:  Do you, Mr. Munoz?  Do you understand?
> DEFENDANT MUNOZ:  Yes, sir.  I do.
> MR. FROST:  And -- And -- And -- And if he wants to say anything differently, I invite the Court to ask him.  Because he and I have -- have always gotten along well.  I believe that he is competent.  He's fluent in the English language.  We've been over some information together. I've spoken with one of his family members, and interviewed personally.  So, I'm familiar with the circumstances surrounding this matter.  The family dynamics in this case are extraordinary, your Honor, just so the Court knows.
>
> But I have talked to [Movant] this morning, and gone over matters with him. And it's my understanding that he does not want a trial and wants to go forward with the plea.  And I believe that he understands the consequences of that.

And if there's anything I've left out, Rufino, please feel free to inform the
Court.
DEFENDANT MUNOZ:  No.  He's got it.
THE COURT:  He's got it right?
DEFENDANT MUNOZ:  He's got it right.
THE COURT:  Okay.  And you -- you don't want a trial, you want a plea?
DEFENDANT MUNOZ:  I want to plea.

(*Id*. at 10-11).

Movant's sworn statements at the plea hearing establish that the entry of his guilty plea was
voluntary and he knew the consequences of his plea.  The undersigned asked Movant at the plea
hearing, "Do you believe, Mr. Munoz, that you've had sufficient time to fully discuss your case with
your attorney, including the discussion of any defenses you may have to the charges against you?"
(*Id*. at 15).  Movant replied, "Yes, sir." (*Id*.).  Mr. Frost agreed that he had sufficient time to consult
with Movant, and explained that Movant had a factual as well as a rational understanding of the
proceedings against him.  (*Id*. at 16).  Mr. Frost stated that he had no problems communicating with
Movant:  "We've gotten along well and he has understood the things that I have discussed with him."
(*Id*.).  Next, Movant asserted that he was satisfied with Mr. Frost's representation in this legal matter,
and he had no complaints about Mr. Frost.  (*Id*.).

Moreover, Movant agreed he had received a copy of the one-count Indictment for the offense
of being a convicted felon in possession of a firearm.  (*Id*. at 17).  Movant testified that he read the
Indictment and reviewed it with Mr. Frost.  (*Id*.).  Then, the Magistrate Judge read the Indictment in
open court.  (*Id*. at 17-19).  Movant stated under oath that he understood the charges against him and
he insisted on pleading guilty.  (*Id*. at 20).  The Magistrate Judge also informed Movant that the
District Judge would have a sentencing hearing and impose a sentence for the charged offense after
considering the contents of a presentence report.  (*Id*. at 22-23).  Movant indicated that he
understood.  (*Id*. at 23).  Finally, the Magistrate Judge advised Movant of the statutory punishment
range and how the Sentencing Guidelines would be determined and considered by the District Judge:

16

THE COURT: All right.  Let's talk about the penalty you face for the offense to which you are pleading guilty.

The statutory range of punishment is:

Up to ten years in prison, so zero to ten years of imprisonment;

A maximum supervised release term of three years, zero to three years of supervised release.  And we're going to talk in more detail about what supervised release is in a minute.  And you're -- you're familiar.  You've been convicted for a federal crime, and so you're -- you're familiar with that, as well;

A fine of not more than $250,000;

A $100 mandatory special assessment.  That's pursuant to the Victims of Crime Act, and payable into the Crime Victims Fund at the time of sentencing.

***So, do you understand the statutory range of punishment that you face?***

DEFENDANT MUNOZ:  ***Yes, sir.***

THE COURT:  That's basically your statutory maximum.

There's another range you need to be aware of, as well.  When the district judge sentences you, he'll do so after considering the guidelines established by the United States Sentencing Commission.  At the conclusion of today's hearing, your case will be referred to the U.S. Probation Office, represented by Mr. Bess here today.  He and his colleagues will prepare a presentence report that I mentioned a few minutes ago.

In that report, they're going to calculate, using those guidelines I told you about, what they believe to be your applicable sentencing guideline range for this particular offense.  They'll get to that range by taking into  consideration such factors as the nature and circumstances of your offense, your role in this offense, your -- your criminal conduct, any criminal history that you have or don't have, and that will go into a calculation.  Using those guidelines, we'll come up with an applicable sentencing guideline range for you in this particular offense.  That's typically a number of months on the low end to a number of months on the high end.

That guideline range is important, however it's merely advisory.  It's a guideline only.  The district judge is required to consider that guideline range, but he's not required to sentence you within the guideline range.  ***After considering the guideline range, he's required to sentence you to a reasonable term within your applicable statutory range which you and I just went over a few minutes ago.***

***Do you understand that?***

DEFENDANT MUNOZ:  ***Yes, sir.***

THE COURT:  Does that make sense?

DEFENDANT MUNOZ:  It makes sense.

(Doc. 54 at 23-26) (emphasis added).

These sworn statements, made in a solemn court proceeding, carry a strong presumption of verity, which Movant has failed to overcome.  *See Blackledge*, 431 U.S. at 74.  Movant has offered nothing whatsoever beyond conclusory allegations and bald assertions to show that counsel failed to advise him about the consequences of pleading guilty.  The record reflects that Movant understood

that he faced a potential maximum sentence of "ten years in prison" and a "maximum supervised release term of three years" when he entered his guilty plea. (Doc. 54 at 24). Therefore, he understood the consequences of pleading guilty. *United States v. Valdez*, 578 F. App'x 366, 367 (5th Cir. 2014) (per curiam) (not selected for publication) (citing *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990)). As such, Movant's claim of ineffective assistance of counsel in the plea context is wholly speculative and conclusory. Since Movant has failed to meet his burden of proof, this ground lacks merit and should be denied.

### 2.     Movant Cannot Show Prejudice

Next, Movant contends that his "counsel's failure to advise him that his guilty plea to the charged offense, i.e. 'felon-in-possession-of-a-firearm' would be changed to 'attempted first degree murder' in calculating his range of punishment under the Sentencing Guidelines resulted in prejudice to [Movant]." (Doc. 61 at 9). This claim completely mischaracterizes the record. In fact, the District Court never changed the "charged offense, i.e. 'felon-in-possession-of-a-firearm' . . . to 'attempted first degree murder,'" as Movant conclusively alleges. Rather, Movant was sentenced for the crime to which he pleaded guilty, being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Thus, Movant has failed to show that he was prejudiced by any purported failure of Mr. Frost to explain that the Court would calculate "his range of punishment under the Sentencing Guidelines," by changing the charged offense at sentencing. Accordingly, Movant's claim that but for Mr. Frost's allegedly erroneous advice he would not have pleaded guilty, he would have proceeded to trial and received a lesser sentence, is entirely conclusory.

When a prisoner challenges a guilty plea based on ineffective assistance of counsel, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 58. To satisfy this requirement in the plea context, the prisoner "must show that there is a reasonable probability that, but for counsel's

errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* Moreover, in non-capital cases, to establish prejudice, the prisoner must show there is a reasonable probability that absent counsel's errors, the defendant's sentence would have been different. *Glover v. United States*, 531 U.S. 198, 199 (2001); *Grammas*, 376 F.3d at 436.

During Movant's plea hearing, the Magistrate Judge fully explained in detail the sentencing process, including preparation of the presentence report, its importance to the Court in determining the sentence to impose, and application of the Sentencing Guidelines. (Doc. 54 at 24-30). Movant testified that he understood the Court's explanations. (*Id.* at 24-28). In addition, Movant testified that the following factual basis, in part, was true:

> The further facts of the case would be that, on or about the 29th of January of 2012, that Mr. Munoz and some of his family members were at El Ranchito, which is a bar or a nightclub here in Midland, and an altercation of some sort broke out. Two family members left the bar driving in a Suburban, and Mr. Munoz and another individual pursued the Suburban in a Camaro at a high rate of speed. And, during that pursuit, the Defendant was in the front passenger seat of the Camaro, and twice fired a 12 gauge shotgun out of the passenger window.

(Doc. 54 at 32).

After admitting the truth of these facts, Movant persisted in his guilty plea. (*Id.* at 29-37). Accordingly, Movant cannot show, nor has he alleged, a reasonable probability that but for Mr. Frost's alleged errors he would not have pleaded guilty but would have gone to trial. *Hill*, 474 U.S. at 59. Because Movant cannot prove that he was prejudiced by any alleged failure of Mr. Frost in the plea context, his ineffective assistance of counsel claim should be denied.

**C.     Movant's Ineffective Assistance of Counsel Claims Relating to Sentencing**

Movant argues that his counsel was ineffective due to his failure to object to the application of U.S.S.G. § 2A2.1(a)(1) cross-reference for attempted first degree murder at sentencing. (Doc. 61 at 4). Movant concedes, however, that "Mr. Frost, [Movant's] attorney voiced objections to the application of the underlying offense of attempted murder. . . ." (*Id.*). Because Movant admits that

19

his counsel did object at sentencing to the calculation of Movant's base offense level for possessing a

firearm in connection with the commission of attempted murder, Movant cannot prove deficient

performance or prejudice and his claim should be denied. The specific objection raised by Movant's

trial counsel is described in the Addendum to the PSR as follows:

> The defendant objects to Paragraph 17. Specifically, it is contended the underlying offense attributable to the defendant is "attempted murder," which the defendant denies, and in support hereof, the defendant relates details as outlined in the defendant's "Acceptance of Responsibility" documents. He and his sister, Jessie, had been struck by Edward Munoz' vehicle causing pain and bodily injury to both the defendant and his sister. Previous to this incident, according to the defendant and other family, Edward Munoz had threatened the lives of the defendant and other family members, had burglarized their parent's home stealing their property and valuables, and had caused extreme difficulties for various family members, all of which had been reported to the police.  However, Edward went unarrested. On the evening in question, the extreme circumstances affected the defendant's mental and emotional state, which placed him in fear of his life, in fear for family members, and while acting under the passion of the moment, the extreme mental anguish and stress from having just been run down by Edward caused him to act.  Edward was arrested following this incident and is facing charges of Aggravated Assault for his actions of the evening in question. The defendant did not go to the location involved with the intent to assault, or harm anyone (defendant was already at the location, when Edward later appeared there) and he had no firearms in his possession. After being run down, the defendant entered his nephew's car and only after entering the vehicle did he discover and know for the first time that his nephew had firearms on and about his person.

(PSR Addendum at 24-25).

An extensive discussion was held at the sentencing hearing on this objection.  (Doc. 49 at 8-

21).  After reviewing the oral recitation of the factual basis during the plea hearing, the District Judge

overruled Movant's objection to the PSR's determination that Movant possessed a firearm in

connection with the commission of the underlying offense of attempted murder.  (*Id*. at 21).  The

District Judge found the PSR "accurate and correct," and adopted "the report and the application of

the Sentencing Guidelines contained in the report."  (*Id*. at 22).  Therefore, the District Court applied

a cross-reference to the guideline for attempted first degree murder under U.S.S.G. § 2A2.1(a)(1) and

determined a base offense level 33.

### 1.      Movant Cannot Show Deficient Performance

Movant faults his attorney for failing to prevent the application of U.S.S.G. § 2A2.1(a)(1), on the ground that Movant "pled guilty to a violation of Title 18 U.S.C. § 922(g)(1) (felon-in possession of a firearm), not attempted first degree murder." (Doc. 61 at 13).  Further, Movant complains that in the "indictment no where [sic] does it allege that he was accused of 'attempted first degree murder.'" (*Id*. at 7).  Movant fails to comprehend that he was not charged, convicted, or sentenced for the criminal offense of attempted first degree murder.  Rather, Movant was charged and pleaded guilty to the criminal offense of being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Accordingly, Movant's repeated assertion that "his felon-in-possession offense [was] punished as 'attempted first degree murder'" is incorrect and misleading.  (*Id*. at 11).  The District Court's finding that Movant possessed firearms in connection with the underlying offense of attempted murder was only relevant to the calculation of Movant's base offense level pursuant to the Sentencing Guidelines.  Accordingly, Movant's contention that his constitutional rights were violated because he "never admitted that he committed 'attempted first [degree] murder'" has no merit.  (*Id*. at 7-8).

The guideline for a violation of 18 U.S.C. § 922(g)(1) is found at U.S.S.G. § 2K2.1.  If the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, then U.S.S.G § 2X1.1 (Attempt, Soliciting, or Conspiracy) applies when the resulting offense level is greater than that determined under U.S.S.G. § 2K2.1.  U.S.S.G. § 2K2.1(c)(1)(A).  In this case, the District Court determined that the underlying offense was Attempted Murder, which is found under U.S.S.G. § 2A2.1.  Considering this underlying offense and U.S.S.G. § 2X1.1, Movant had a base offense level 33.

It must be noted that Movant previously challenged the Court's application of the cross-reference for attempted murder under U.S.S.G. § 2A2.1(a)(1) on direct appeal, claiming that "his

actions did not amount to attempted first degree murder because he fired at his brother's vehicle in a sudden rage following heated exchanges with his brother." *Munoz*, 523 F. App'x at 278. The Fifth Circuit upheld the District Court's finding that Movant's use of the firearm occurred in connection with the commission of attempted first degree murder. *Id.* A claim that has been raised and resolved on direct appeal may not be revisited on collateral review. *See United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (citing *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980)). To the extent that Movant challenges the imposition of his sentence on the basis that he did not "intend to kill his brother or his sister-in-law," this claim should be denied. (Doc. 61 at 3). Even if this issue had not been fully resolved on direct review, claims of this sort generally may not be raised on collateral review because "[a] district court's calculation under or application of the sentencing guidelines standing alone is not the type of error cognizable under Section 2255." *See United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995). For these reasons, Movant's claims alleging the misapplication of the Sentencing Guidelines may not be considered by the Court.

Movant's counsel did in fact object to the application of the attempted murder cross-reference after receiving the PSR and argued extensively at the sentencing hearing that Movant did not intend to murder the alleged victims; thus, there is no evidence that Mr. Frost's conduct fell below an objective standard of reasonableness. Significantly, the District Court correctly applied the Sentencing Guidelines. Therefore, Movant's counsel had no reason to further object to the application of the attempted murder cross-reference. Because any objection from trial counsel concerning the increase in Movant's base offense level under U.S.S.G. § 2A2.1(a)(1) would have been frivolous, Mr. Frost's alleged failure to further object at the sentencing hearing did not fall below an objective standard of reasonableness. *Strickland*, 466 U.S. at 689.

2.        **Movant Cannot Prove Prejudice**

In the PSR, the Probation Officer recommended that the Court apply U.S.S.G. § 2A2.1(a)(1) because Movant's possession of the firearm facilitated his commission of attempted first degree murder.  The U.S. Probation Officer recommended that the underlying offense constituted attempted murder based on the following facts:

> The defendant and his nephew intended to kill Edward when they engaged in a vehicle pursuit with Edward and began shooting at him.  The defendant does not offer an explanation as to what he intended to achieve by shooting at his brother.  Instead, he only offers the Court justification for his actions.  It should be noted the defendant does not contest the fact he shot at his brother.

(PSR Addendum at 25).   A presentence report is generally sufficiently reliable evidence for factfinding under the Sentencing Guidelines and the Court may adopt it without further inquiry if the facts have an adequate evidentiary basis and the defendant does not present rebuttal evidence.  *See United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006).   At sentencing, Movant failed to provide any credible evidence to rebut the facts described in the PSR.   Moreover, Movant's own admissions at the plea hearing that the Factual Basis was true and correct provided an adequate evidentiary basis for the facts contained in the PSR.

By application of the attempted first degree murder cross-reference provision, the PSR calculated a base offense level 33, which applies "if the object of the offense would have constituted first degree murder."  *See* U.S.S.G. § 2A2.1(a)(1).   The District Court then determined whether the object of the offense would have constituted first degree murder.   The commentary of Section 2A2.1 defines "first degree murder" as "conduct that . . . would constitute first degree murder under 18 U.S.C. § 1111."  *See* U.S.S.G. § 2A2.1, comment (n.1).   Section 1111(a) provides in relevant part: "Murder is the unlawful killing of a human being with malice aforethought."   Section 1111 defines first degree murder as any kind of willful, deliberate, malicious, and premeditated killing or killing perpetrated from a premeditated design unlawfully and maliciously to affect the death of any human

23

being.  In addressing § 1111, the Fifth Circuit has held: "[m]alice does not require a subjective intent to kill, but may be established by evidence of conduct which is a reckless and wanton and a gross deviation from a reasonable standard of care."  *United States v. Villanueva*, 541 F. App'x 486, 487 (5th Cir. 2013) (not selected for publication) (quoting *United States v. Shaw*, 701 F.2d 367, 392 n. 20 (5th Cir.1983)).  In short, Movant "is incorrect in asserting Guideline § 2A2.1 requires showing an intent to kill."  *Id*.  The facts presented in the PSR, as adopted by the District Court, must establish either "intent to do serious bodily injury" or "extreme recklessness and wanton disregard for human life."  *United States v. Lemus-Gonzlaez*, 563 F.3d 88, 92 (5th Cir. 2009).

In the present case, the Fifth Circuit determined that the Court properly applied Section 922(g)(1) and imposed a reasonable sentence of imprisonment based on the Sentencing Guidelines.  Specifically, the Fifth Circuit explained that "[t]he amount of time needed for premeditation of a killing depends on the person and the circumstances" and only "must be long enough for the killer, after forming the intent to kill, to be fully conscious of that intent."  *Munoz*, 523 F. App'x at 278 (quoting *United States v. Snarr*, 704 F.3d 368, 389 (5th Cir. 2013)).  In addition, the Fifth Circuit elaborated: "[w]hile 'there must be some appreciable time for reflection and consideration before execution of the act,' there is no requirement of a 'lapse of days or hours or even minutes.'"  *Id*. (quoting *United States v. Shaw*, 701 F.2d 367, 393 (5th Cir. 1983)).

As the Fifth Circuit articulated, Movant "got in a car and willfully sought out his brother and his brother's wife before firing on them."  *Id*.  Therefore, the record is clear that Movant did intend to do serious bodily harm or acted with extreme recklessness and wanton disregard for human life.  Moreover, the District Judge was entitled to rely on the following facts contained in the Addendum to the PSR:

> In the instant offense, the defendant's actions were most certainly willful, deliberate, malicious, and premeditated.  According to the defendant's sister, Jessie Quiroz, Edward was a drug addict and had recently burglarized the homes of several family members.  Quiroz and other family members decided to pursue charges

24

against Edward, and because of this, Edward has been upset with the family. Nonetheless, the defendant called Edward and invited him to the El Ranchito bar. . . . Given the circumstances between Edward and the family, it would be reasonably foreseeable that inviting Edward to join the family at the El Ranchito bar would lead to a confrontation.

The confrontation continued.  As Edward and his wife were leaving the parking lot, the defendant and several other family members began throwing rocks at Edward's vehicle, which only served to inflame the situation.  Edward then pulled back into the parking lot and struck the defendant with his vehicle, and then left the area.  At this point, the defendant entered a vehicle driven by Christopher Hinojos, his nephew.  He and Hinojos then pursued Edward and his wife, who was also in the vehicle, while shooting at them.  It is the opinion of the probation officer the defendant had enough time to become fully aware of what he intended to do and substantially thought it over before acting. . . .

Fortunately for Munoz, his actions did not result in the death of his brother, or in the death of his brother's pregnant wife.  Nonetheless, it is the opinion of the probation officer the defendant's actions were willful, deliberate, malicious, and premeditated, and had he been successful in his endeavor, the offense would have constituted first degree murder.  The defendant, by his own will, deliberately shot at the victims.  Additionally, the defendant had enough time to become fully aware of what he intended to do and substantially thought it over before he acted.  Indeed, Munoz had the opportunity to end the confrontation between his brother and him after their altercation at the bar.  Instead, Munoz chose to throw rocks at his brother's vehicle as he was leaving.  The defendant had yet another opportunity to end this conflict when, after being struck by Edward's vehicle, Edward drove off and was no longer a threat to the defendant.  Nonetheless, the defendant decided to join his nephew in pursuing his brother and engaged in a vehicle pursuit.  Once inside his nephew's vehicle, Munoz had yet another opportunity to put an end to this ordeal, however, he chose to fire a shotgun at his brother's vehicle multiple times.

(PSR Addendum at 25-26).  Based on these facts, Movant's possession of the firearm facilitated the commission of attempted first degree murder and the Court properly applied U.S.S.G § 2A2.1(a)(1). Accordingly, Movant has not established that he was subjected to additional jail time as a result of Mr. Frost's failure to fully object to the application of the attempted murder cross-reference.  Since Movant cannot show prejudice, this claim of ineffectiveness should be denied.

## D.    Movant's Sentence Was Not Illegal Under *Apprendi*

Movant asserts that "[a]t the time of [his] guilty plea, it was settled in this and every other federal circuit that any fact that increased the range of punishment must be included in the i[n]dictment, admitted by the defendant, and proved beyond a reasonable doubt."  (Doc. 61 at 7).

Movant argues that because the Indictment did not "allege that he was accused of 'attempted first degree murder,'" and he "never admitted that he committed 'attempted first [degree] murder,'" the failure of his counsel to object to the Court's use of the cross-reference under U.S.S.G. § 2A2.1(a)(1) violated his "Due Process Clause right under the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the proscribed range of punishment for a crime must be charged in an indictment, submitted to a jury, and admitted by a guilty pleading defendant." (*Id*. at 7-8). Movant cites *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in support of his claim that his rights to due process and jury trial were violated by the District Court's findings relating to U.S.S.G. § 2A2.1(a)(1). (Doc. 69 at 7).

The U.S. Supreme Court in *Apprendi* ruled that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and must be proved beyond a reasonable doubt." 530 U.S. at 490. However, the holding in *Apprendi* is "limited to the facts which increase the penalty beyond the statutory maximum, and does not invalidate a court's factual finding for the purposes of determining the applicable Sentencing Guidelines." *United States v. Doggett*, 230 F.3d 160, 166 (5th Cir. 2000). As Movant concedes, the Sentencing Guidelines are advisory for the judiciary pursuant to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). (Doc. 61 at 4). Further, Movant's assertion that he must be found guilty beyond a reasonable doubt for attempted first degree murder in order for the cross-reference under U.S.S.G. § 2A2.1(a)(1) to be applicable to increase his base offense level at sentencing, is simply incorrect. "The sentencing judge is entitled to find by a ***preponderance of the evidence*** all the facts relevant to a determination of a guideline sentencing range." *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2009) (emphasis added).

Movant claims that the guideline enhancement which resulted in his base offense level being increased was unconstitutional because this adjustment involved facts beyond those established by

his guilty plea.  (Doc. 69 at 5).  His claim is without merit.  Movant's base offense level was set at 33, pursuant to U.S.S.G. § 2A2.1(a)(1) since Movant was a convicted felon in possession of a firearm in connection with the commission of attempted first degree murder.  This offense level was then decreased by 3 points for acceptance of responsibility, yielding a Total Offense Level 30.  The facts used to calculate Movant's offense level were contained in the Factual Basis, which Movant admitted was true at the plea hearing.  (Doc. 54 at 32-34).  Therefore, the District Court did not go beyond facts which Movant himself approved and accepted.

Moreover, even if the Court had gone beyond the facts established in the Factual Basis, this would not have been improper, for the Court is entitled to consider all facts necessary to determine the appropriate guideline range.  *Mares*, 402 F.3d at 519.  *Apprendi* does not apply to this determination, as the sentence imposed did not go beyond the statutory maximum.  The statutory maximum was ten years imprisonment (120 months).  (Doc. 54 at 24).  The guideline range was 108 to 120 months.  (Doc. 49 at 26).  The District Judge sentenced Movant to 108 months in the United States Bureau of Prisons.  (*Id*. at 33).  Therefore, Movant's sentence did not go beyond the statutory maximum and was within the applicable guideline range.  Accordingly, Movant's reliance on *Apprendi* is misplaced and this claim should be denied.

To the extent that Movant seeks to raise an *Alleyne* claim, it is the recommendation of the Magistrate Judge that this claim should also be denied.  In *Alleyne*, the Supreme Court held that any fact that increases the mandatory minimum sentence for a crime (other than the fact of a prior conviction) is an "element" of the criminal offense and must be proven beyond a reasonable doubt by submission to the jury.  *Alleyne v. United States*, -- U.S. -- , -- , 133 S.Ct. 2151, 2155 (2013).  Movant was not subject to a statutory minimum punishment.  Rather, Movant complains of the District Judge's finding that the cross-reference for the underlying offense of attempted murder pursuant to U.S.S.G. § 2A2.1(a)(1) applied to increase the base offense level under the Sentencing

Guidelines.  This finding was not required to be proved beyond a reasonable doubt and not subject to the holding in *Alleyne*.  The *Alleyne* decision did not affect the holding in *United States v. Booker*, 543 U.S. 220 (2005), that sentencing courts may make factual findings that increase a defendant's sentencing guideline range, so long as the guidelines are treated as advisory.  Because Movant's base offense level increased as a result of the application of guidelines provisions, Movant was not aggrieved under the *Alleyne* doctrine and the Court should find that this claim fails.

**E.**     **Movant's Ineffective Assistance of Appellate Counsel Claim**

Movant asserts that his appellate counsel, David K. Sergi, provided ineffective assistance by "making a frivolous argument to the United States Court of Appeals for the Fifth Circuit, i.e., 'Munoz' actions did not amount to attempted first degree murder because he fired at his brother's vehicle in a sudden rage following heated exchanges with his brother.'" (Doc. 61 at 15).  Apart from this bare assertion, Movant fails to provide the Court with additional details or legal support for his claim that appellate counsel's performance was deficient and prejudiced him.

"The right of effective appellate counsel must pass the *Strickland* standards."  *Williams v. Collins*, 16 F.3d 626, 635 (5th Cir. 1994). The movant must show that "(1) his appellate counsel's performance was so deficient as to fall below objectively reasonable conduct of appellate counsel and (2) his case was prejudiced as a result."  *Id.*  In a claim of ineffective assistance of counsel on appeal, a movant must demonstrate both that "counsel's errors were so serious that counsel was not functioning as the counsel guaranteed to the defendant by the sixth amendment" and "that the particular lapse was prejudicial, meaning that there is a reasonable probability that but for the error the ultimate result would have been different."  *McCrae v. Blackburn*, 793 F.2d 684, 688 (5th Cir. 1986).  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the appeal.  *Sharp v. Puckett*, 930 F.2d 450, 453 (5th Cir.1991).  The Constitution does not require appellate counsel to raise every non-frivolous ground that might be asserted on appeal.  *Jones v.*

*Barnes*, 463 U.S. 745, 751 (1983); *United States v. Williams*, 476 F. App'x 1, at *1 (5th Cir. Mar. 26, 2012) (per curiam) (not selected for publication).  To prevail on an ineffective assistance of appellate counsel claim, Movant must show that the issues he sought to pursue were clearly stronger than the issue counsel pursued.  *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Movant provides no support for his argument that his appellate counsel could have pursued a stronger issue on direct appeal.  Again, Movant's ineffective assistance of counsel claim relates to the application of the cross-reference for attempted murder under U.S.S.G. § 2A2.1(a)(1).  The undersigned Magistrate Judge has concluded above, and the Fifth Circuit determined, that the District Court correctly found that Movant possessed a firearm in connection with the commission of attempted murder.  Because any additional argument raised by Mr. Sergi challenging the District Court's finding with regard to the application of U.S.S.G. § 2A2.1(a)(1) would have been unsuccessful, Mr. Sergi did not perform deficiently by failing to assert frivolous arguments on appeal.

Further, Movant has failed to show that, had Mr. Sergi raised additional issues on direct appeal, there is a reasonable probability that the outcome of Movant's appeal would have been different.  Accordingly, Movant's claim of ineffective assistance of appellate counsel fails to satisfy the prejudice prong of *Strickland*.  "[C]ounsel is not ineffective for failing to raise every possible point on appeal." *Sharp v. Puckett*, 930 F.2d 450, 452 (5th Cir. 1991).  Since Movant has not shown something more than conclusory allegations, his claim of ineffective assistance of appellate counsel is not tenable on this ground.  Therefore, the undersigned Magistrate Judge recommends that Movant's Section 2255 Motion to Vacate be denied and that this Section 2255 proceeding be dismissed.

## VIII.   CONCLUSION

Movant's contentions are unsupported, and "[m]ere conclusory statements do not raise a constitutional issue in a habeas case." *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982).  Relief in a proceeding collaterally attacking a sentence under Section 2255 is limited to situations involving "transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Guerra*, 94 F.3d 989, 995 (5th Cir. 1996).  A hearing is not required on claims based on unsupported generalizations or on conclusory or speculative claims. *United States v. Martinez*, 181 F.3d 627, 629 (5th Cir. 1999) (vague and conclusory allegations not sufficient to trigger a hearing); *United States v. Fishel*, 747 F.2d 271, 273 (5th Cir. 1984) (conclusory and speculative allegations not sufficient to warrant a hearing).   In their current state, Movant's allegations fail to state a cognizable constitutional violation under 28 U.S.C. § 2255.  It is, therefore, the recommendation of the Magistrate Judge that Movant's Section 2255 Motion to Vacate, Set Aside, or Correct Sentence be **DENIED.**  (Doc. 60).

## IX.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability ("COA") may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court of the United States fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In cases where a district court rejected a petitioner's constitutional claims on the merits,

"[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id*.; *see also, Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003).  According to the Supreme Court:

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack*, 529 U.S. at 484.  In this case, it is respectfully recommended that reasonable jurists could not find the dismissal of Movant's Section 2255 case on substantive or procedural grounds debatable or wrong, nor could reasonable jurists find that the issues presented are adequate to deserve encouragement to proceed further.  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).  Accordingly, it is recommended that the Court find that Movant is not entitled to a certificate of appealability as to his claims.

## X.   RECOMMENDATION

In accordance with the preceding discussion, the undersigned **RECOMMENDS** that the District Court **DISMISS WITH PREJUDICE** Movant Rufino Villa Munoz's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255.  (Doc. 60).  It is further recommended that a certificate of appealability be **DENIED**.  Finally, it is recommended that any pending motions be **DENIED** as moot.

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

In the event that a party *has not been served* by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy.  A party filing objections

must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Court need not consider frivolous, conclusive, or general objections.  Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

SIGNED this 22nd day of January, 2015.

DAVID COUNTS
U.S. MAGISTRATE JUDGE